DA 09-0354

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 213

STATE OF MONTANA,

       Plaintiff and Appellee,

v.

DANNY SARTAIN,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC 08-86B
Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Nancy G. Schwartz, NG Schwartz Law, PLLC, Billings, Montana

       For Appellee:

           Steve Bullock, Montana Attorney General; Micheal S. Wellenstein,
Assistant Attorney General; Helena, Montana

           Marty Lambert, Gallatin County Attorney; Scott Lanzon, Deputy County
Attorney; Bozeman, Montana

Submitted on Briefs:  August 17, 2010

Decided:  October 5, 2010

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Danny Sartain appeals from the judgment entered by the Eighteenth Judicial District Court, Gallatin County, convicting him of burglary under § 45-6-204, MCA. We affirm. Sartain raises two issues, restated as follows:

¶2 ***1. Did the District Court err in denying Sartain's motion to dismiss for lack of a speedy trial?***

¶3 ***2. Did defense counsel's failure to challenge a show-up identification, challenge a warrantless arrest, move to suppress defendant's statements following arrest, and object to certain remarks of the prosecutor made during trial and in closing argument constitute ineffective assistance of counsel reviewable on direct appeal?***

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 On March 25, 2008, in Bozeman, Timothy Hop returned from snow skiing and found a male intruder in his house. He chased the man out of his house and called 911. Police were dispatched. A responding officer observed a man matching Hop's description of the intruder jogging down a sidewalk in the area. Another resident of the area, Jason Schutz, was watching the jogging man when the officer stopped and asked Schutz what he was watching. He responded that the jogging man had just jumped the fence in his backyard, cut through a neighbor's yard, and then started running down the street. The officer arrested the jogging man, defendant Sartain, on suspicion of burglary. A short time later, the officer took Sartain back to the scene of the burglary, had him step out of the police vehicle and conducted a "show-up" identification of Sartain first with Hop and then Kristi Helsper, another neighbor who had observed a man jogging down the street after hearing a loud noise. Both stated that Sartain matched the description of

2

the person, but that they were not able to positively identify him. Later at trial, Hop testified that he was positive that Sartain was the intruder. Shortly after the show-up identification, Sartain was taken to the Law and Justice Center in Bozeman, where he was read his *Miranda* rights, signed a waiver, and was interviewed by police.

¶5 The next day, Sartain made an initial appearance in justice court, which set bail and conditionally appointed the State Public Defender as counsel. On April 1, 2008, Sartain posted bond and was released. On April 14, 2008, Sartain was charged with burglary, a felony, by information filed in the District Court, and an appearance was scheduled for May 5, 2008.

¶6 At the time of his arrest, Sartain was on parole out of the Montana State Prison (MSP) for a two-count burglary sentence from Flathead County. The day after he was released on bond for this charge, Sartain was taken into custody by his parole officer in Butte and detained at the Butte-Silver Bow County Detention Facility. He was subsequently transported to MSP pending parole revocation proceedings on his previous burglary conviction. Sartain remained incarcerated at MSP throughout the prosecution of this matter. He did not appear on May 5, 2008, because of his incarceration, thus the District Court rescheduled his appearance, and it was ultimately held on July 7, 2008. The District Court appointed the State Public Defender to represent Sartain and set an omnibus hearing for August 11, 2008.

¶7 At the omnibus hearing, the State filed a notice of intent to seek increased punishment for Sartain as a persistent felony offender pursuant to § 46-13-108, MCA,

3

and the discussion then moved to setting a trial date. The prosecutor believed the jury trial would only take one day, but defense counsel requested three days, saying that "if I don't subpoena all these folks that are involved and have them in here and cross-examine them, my client's not going to be happy." Noting that it had available dates for a one-day trial in November 2008 but that the earliest date for a three-day trial was in March 2009, the District Court raised concerns about Sartain's speedy trial right. The District Court then identified available dates in September 2008, but defense counsel was not available from September 2 through September 25. The court was not available in October. After counsel engaged in further discussion, the following exchange occurred:

> [Prosecutor]: Your Honor, after discussing it with [defense counsel] it appears that it might benefit the Defendant to have an additional time to call witnesses and to have the full three days to try the case. If that is the case, then the State does not have any objection of it being set in March. . . .

> [Defense counsel]: . . . So the State's representing to the Court that they think they can make their case with one or two witnesses and I'm saying that I would subpoena all parties involved, but that would take longer than a day. And so that being the case, I would request the three-day setting.

The District Court then set the trial for March 17, 2009, 357 days after the date of Sartain's arrest. Sartain was not present at the omnibus hearing and learned about the trial date in September 2008.

¶8 On January 8, 2009, approximately four months after learning of the trial date setting, Sartain filed a motion to dismiss for lack of a speedy trial. At the hearing on the motion, the District Court reminded defense counsel about his request during the

4

omnibus hearing for the March trial date, despite concern for Sartain's speedy trial right.

Defense counsel answered:

> [T]he best answer I have for you, Your Honor, is that while I was in Court having a discussion with you and agreeing, my client apparently didn't agree. And so . . . he wasn't happy with the outcome and so at his behest the Court has a speedy trial motion before it.

Sartain testified at the speedy trial hearing about detrimental health and safety conditions at MSP, that he had medical conditions which had intensified after incarceration on this charge, that he had spent approximately seven or eight years of his life in prison, that he lost a job after being arrested on this charge, and that he had to be strip searched prior to meeting with his attorney. During cross-examination, Sartain testified about the relationship between his previous conviction of burglary and his incarceration at MSP during the pendency of this charge:

> [Prosecutor]: [Y]ou were on parole for the burglary conviction?
>
> [Sartain]: That is correct.
>
> [Prosecutor]: And the reason that you are at the Montana State Prison is because of that conviction?
>
> [Sartain]: No.
>
> [Prosecutor]: Your parole is on that conviction?
>
> [Sartain]: My parole is on that conviction. [The parole proceeding] is pending an adjudication of this hearing.
>
> [Prosecutor]: *But if you had not been on parole for burglary out of . . . Flathead County you would not be at the Montana State Prison right now?*
>
> [Sartain]: *That's true.* [Emphasis added.]

The District Court issued an order denying the motion to dismiss on March 9, 2009.

¶9 Prior to trial, defense counsel did not challenge the "show-up" identification or Sartain's arrest, or move to suppress statements made by Sartain. During trial, defense counsel did not object to the in-court identification of Sartain, the prosecutor's reference to an officer's testimony as "the truth," the prosecutor's reference to witnesses such as Schutz and Helsper as eyewitnesses even though they did not see the burglary occur, and the prosecutor's comment in closing argument that defense counsel had done its job "to muddy the waters." After a two-day trial, the jury returned a verdict of guilty, and Sartain was sentenced as a persistent felony offender to a forty year sentence, to run concurrently with his previous burglary sentence. Sartain appeals.

## STANDARD OF REVIEW

¶10 We review the disposition of a motion to dismiss on speedy trial grounds by reviewing the factual findings to determine if they are clearly erroneous. *State v. Houghton*, 2010 MT 145, ¶ 13, 357 Mont. 9, 234 P.3d 904 (citing *State v. Ariegwe*, 2007 MT 204, ¶ 119, 338 Mont. 442, 167 P.3d 815). Factual findings are clearly erroneous "if they are not supported by substantial credible evidence, if the court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been made." *Ariegwe*, ¶ 119 (citing *Ray v. Nansel*, 2002 MT 191, ¶ 19, 311 Mont. 135, 53 P.3d 870). Whether factual circumstances constitute a violation of the right to a speedy trial is a question of constitutional law.

*Ariegwe*, ¶ 119. Thus, we review de novo the court's conclusions of law. *Ariegwe*, ¶ 119.

¶11 Ineffective assistance of counsel claims present mixed issues of fact and law, which we review de novo. *State v. Herman*, 2008 MT 187, ¶ 10, 343 Mont. 494, 188 P.3d 978 (citing *State v. Kougl*, 2004 MT 243, ¶ 12, 323 Mont. 6, 97 P.3d 1095).

## DISCUSSION

¶12 ***1. Did the District Court err in denying Sartain's motion to dismiss for lack of a speedy trial?***

¶13 The Sixth and Fourteenth Amendments of the United States Constitution and Article II, Section 24 of the Montana Constitution grant to criminal defendants the right to a speedy trial. *Ariegwe*, ¶ 20 (citing *Klopfer v. North Carolina*, 386 U.S. 213, 222-26, 87 S. Ct. 988, 993-95 (1967)). Drawing from the Supreme Court's analysis of the federal right in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972), we balance four factors to determine if a defendant's right to a speedy trial has been violated under the Montana Constitution: (1) the length of the delay, (2) the reasons for the delay, (3) the accused's responses to the delay, and (4) prejudice to the accused caused by the delay. *State v. Lacey*, 2010 MT 6, ¶ 14, 355 Mont. 31, 224 P.3d 1247 (citing *State v. Billman*, 2008 MT 326, ¶ 11, 346 Mont. 118, 194 P.3d 58); *Ariegwe*, ¶ 35. Given the "inherently case-specific nature of speedy trial claims," we weigh the four factors based upon the facts and circumstances of each case. *Ariegwe*, ¶ 105.

¶14 Sartain does not contest the District Court's analysis of factors one and two, which the District Court weighed in his favor, but challenges the District Court's findings and

conclusions under factors three and four, which led the court to conclude that Sartain's speedy trial right had not been violated. Before turning to the parties' arguments under factors three and four, we briefly summarize the District Court's conclusions regarding factors one and two.

¶15 Under factor one, the District Court found the length of the delay from the date of Sartain's arrest for burglary on March 25, 2008, to the scheduled trial on March 17, 2009, was 357 days. The parties do not contest the court's findings and conclusions under this factor. We observe, as did the District Court, that the length of delay meets the required 200 day trigger for speedy trial analysis. *Ariegwe*, ¶ 41.

¶16 Under factor two, reasons for the delay, the District Court attributed 332 days of delay to the State and 25 days to Sartain. Specifically, the District Court charged the State with 103 days of delay due to lack of diligence and 229 days due to inherent institutional delay.[1] Of the 25 days charged to Sartain, one was for the day Sartain was released on bail prior to being taken into custody by his parole officer. The remaining 24 days were charged to Sartain for the period that his defense counsel was unavailable for an earlier trial date between September 2 and September 25, 2008. The parties do not raise other contentions with the District Court's findings and conclusions under factor two, and thus we accept them for our analysis.

---

[1] The State explains that the District Court slightly miscalculated the amount of institutional delay in its favor. Sartain does not contest the State's concession, and thus we use 229 days for the amount of institutional delay, rather than the 218 days used by the District Court.

8

¶17 Turning to factor three, the accused's responses to the delay, Sartain argues that the District Court's finding that he acquiesced to the March 17, 2009 trial setting was clearly erroneous in the absence of a written waiver of his speedy trial right or other evidence of his consent to the delay. The State counters that the court correctly found that Sartain acquiesced in the delay and weighed this factor against Sartain.

¶18 While an accused has " 'no duty to bring himself to trial,' " the accused's responses to the delay are "an 'important' consideration" in determining if a defendant's right to a speedy trial has been violated. *Ariegwe*, ¶¶ 76, 82 (quoting *Barker*, 407 U.S. at 527, 534, 92 S. Ct. at 2190, 2194). We consider the totality of an accused's responses to the delay to ascertain if the defendant "actually wanted a speedy trial" and what weight to be given to the other three factors in our analysis. *Ariegwe*, ¶ 79. Such circumstances as the "timeliness, persistence, and sincerity of the objections, the reasons for the acquiescence, whether the accused was represented by counsel, [and] the accused's pretrial conduct (as that conduct bears on the speedy trial right)" are considered. *Ariegwe*, ¶ 80 (citation omitted).

¶19 The District Court reviewed the discussions leading to the setting of the trial in March 2009, noting it had raised a concern about the Defendant's speedy trial right and had proposed earlier trial dates in September and November 2008. The court recalled that the March date was chosen "in accordance with Defendant's need for more trial days" and reiterated defense counsel's representations at the omnibus hearing:

> [Defense counsel]: [T]he State's representing to the Court that they think they can make their case with one or two witnesses and I'm saying that I

> would subpoena all parties involved, but that would take longer than a day. And so that being the case, *I would request the three-day setting.* [Emphasis added.]

The District Court observed that when Defendant "personally became aware of the trial date in September, 2008, [he] made no objection until he filed his Motion to Dismiss on January 8, 2009, which was four months after the Court set the trial date." The court reasoned that this illustrated "the Defendant's lack of persistence and sincerity in objecting to the trial date." The court also observed the State's diligence in bringing the matter, noting "[t]he State expressed its concerns about the speedy trial issue," and that "[i]t was only after Defendant's counsel desired additional time that the prosecutor did not object to the March trial date."

¶20　We conclude the District Court's findings under factor three were not clearly erroneous, and its conclusions were correct. At the August 11, 2008 omnibus hearing, the trial was scheduled in March 2009 at the request of Sartain's counsel, who rejected earlier trial dates proposed by the court. The prosecutor consented to the later setting only after defense counsel stated a three-day setting was required. The delayed setting was thus a result of the defense's request. Then, when Sartain became aware of the scheduled trial date in September, he delayed in raising an objection until January 9, 2009, about four months later. By then, the delay had reached 289 days. While there was evidence in the record from Sartain's attorney that he and Sartain "apparently didn't agree" on the delay, there was also substantial evidence to support the District Court's

10

findings, and its conclusion about Sartain's lack of persistence in demanding a speedy trial was correct.

¶21 Under factor four, prejudice to the accused caused by the delay, we consider prejudice in the light of three interests of a defendant: (i) preventing oppressive pretrial incarceration, (ii) minimizing anxiety and concern of the accused, and (iii) limiting possibilities of the defense being impaired by the delay. *Ariegwe*, ¶ 88 (citing *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193; *Doggett v. United States*, 505 U.S. 647, 654, 112 S. Ct. 2686, 2692 (1992)). An "intensifying presumption of prejudice" against the accused arises after the delay reaches 200 days and requires, as the delay lengthens, less proof from the defendant showing prejudice and more proof from the state showing a lack thereof. *Ariegwe*, ¶¶ 49-50, 56.

¶22 When considering whether incarceration was oppressive, "all of the circumstances of the incarceration" are considered, including the duration of incarceration, complexity of the offense, misconduct of the accused, and the conditions of incarceration. *Ariegwe*, ¶¶ 90-93. The District Court considered Sartain's length of pretrial incarceration and his testimony regarding the conditions of the prison and the detrimental effects his incarceration had upon his job, relationships, and health. The court observed that Sartain had suffered from some of his ailments prior to his incarceration. It reasoned that Sartain's incarceration at MSP prior to trial "stem[med]" from the pending charge of burglary, but was not unrelated to Sartain's earlier conviction for which he was on parole,

11

and noted Sartain's criminal history and the time periods he had previously spent in jail. The court concluded that Sartain's pretrial incarceration was not unduly oppressive.

¶23 We agree with the District Court's conclusion. As the court observed, some of Sartain's ailments about which he testified existed prior to his incarceration. Importantly, Sartain's incarceration at MSP was due, in primary part, to his status as a parolee on his previous sentence at the time of his arrest in this case. While Sartain testified that his incarceration occurred only because of the charge in this case, and notes that his parole proceeding remained pending throughout this matter and largely dependent upon the outcome here, nonetheless his incarceration occurred because of his parole status. Sartain was released on bail in this proceeding, ending his incarceration. He was then taken back into custody by his parole officer and detained thereafter upon the alleged parole violation. *See Ariegwe*, ¶ 92 ("the fact that the accused was incarcerated on a separate charge while awaiting trial on the instant charge informs the issue of oppressiveness"); *State v. Bowsher*, 2005 MT 279, ¶ 15, 329 Mont. 218, 123 P.3d 230 ("Incarceration on different charges negates any prejudice from incarceration while awaiting trial."). Considering "all of the circumstances of the incarceration," the court did not err in its finding that Sartain's pretrial incarceration was not unduly oppressive. *Ariegwe*, ¶ 90.

¶24 Under the second interest, evidence of the accused's anxiety and concern beyond that "inherent in being accused of a crime" suggests prejudice against the defendant. *Ariegwe*, ¶ 97. We consider whether "the delay in bringing the accused to trial has unduly prolonged the disruption of his or her life or aggravated the anxiety and concern"

of the accused. *Ariegwe*, ¶ 97. The District Court considered Sartain's testimony about his anxiety, concern, and economic difficulties he suffered, and then evaluated this testimony in light of Sartain's actions in response to the delay to reject his claims. We conclude the District Court's findings that Sartain's anxiety and concern were not aggravated by the delay are not clearly erroneous. Sartain's actions in not promptly raising concerns about the trial delay and the lack of an evidentiary connection between Sartain's anxiety and the delay supports the court's conclusion.

¶25 Impairment of the defense is potentially the most serious interest protected by the speedy trial right. *Billman*, ¶ 47 (citing *Ariegwe*, ¶ 98). In the absence of affirmative proof of impairment, we also assess impairment by looking to the other speedy trial factors in the speedy trial analysis. *Ariegwe*, ¶ 100. Sartain's evidence of impairment was that prison procedures complicated communication between Sartain and his attorney, and that Hop's memory had seemed to improve over time. The District Court observed that the delay in setting trial was intended to give Sartain a greater opportunity to call his witnesses, thus *benefiting* the defense, and found that his defense was not impaired. *See e.g. State v. Morrisey*, 2009 MT 201, ¶ 71, 351 Mont. 144, 214 P.3d 708 ("the record suggests that Morrisey's ability to prepare his defense was benefited, not prejudiced, by the continuances in his trial"). Considering the other speedy trial factors, factor three supports the court's conclusion. Sartain's lack of complaint to the delay for four months is consistent with the finding that Sartain's defense was not impaired. *Ariegwe*, ¶ 100 ("the more imperiled the accused's ability to present an effective defense becomes, the

13

more likely he or she is to complain about the delay"). We conclude the court's findings on impairment of defense were not clearly erroneous given the scant evidence provided to the court and considering Sartain's own actions, and that the court correctly concluded that Sartain was not prejudiced by the delay.

¶26 Finally, a court weighs and balances the speedy trial factors "based on the facts and circumstances of the particular case." *Ariegwe*, ¶ 105. The District Court concluded that the first and second factors weighed in Sartain's favor, while the third factor, given heavy weight by the court, and fourth factor weighed in favor of the State. The court concluded that Sartain's speedy trial right was not violated. We agree. Despite the length of delay and the attribution of delay to the State, largely as institutional delay, the weighing and balancing of the factors led the court to the proper conclusion that Sartain's speedy trial right was not violated.

¶27 ***2. Did defense counsel's failure to challenge a show-up identification, challenge a warrantless arrest, move to suppress defendant's statements following arrest, and object to certain remarks of the prosecutor made during trial and in closing argument constitute ineffective assistance of counsel reviewable on direct appeal?***[2]

¶28 Sartain argues that four omissions of his counsel at trial are record-based, or in the alternative, have no plausible justification, and upon review justify a conclusion that Sartain received prejudicial ineffective assistance of counsel, entitling him to a new trial. These omissions of counsel include: failure to challenge Hop and Helsper's show-up

---

[2] Sartain raises two additional ineffective assistance of counsel claims in his statement of issues, but does not develop further argument on those issues, and therefore we do not address them. M. R. App. P. 12(1)(f); *see also State v. St. Germain*, 2007 MT 28, ¶ 41 n. 1, 336 Mont. 17, 153 P.3d 591.

14

identification, to challenge Sartain's warrantless arrest, to move to suppress Sartain's statements following arrest, and to object to improper references and remarks made by the prosecutor during trial and in closing argument. The State responds that the record is silent as to the reasons for the attorney's omissions, and thus the claims of ineffective assistance of counsel should be addressed in a post-conviction proceeding rather than on direct appeal.

¶29 Article II, Section 24 of the Montana Constitution and the Sixth Amendment of the United States Constitution guarantee a defendant the right to effective assistance of counsel. We review claims of ineffective assistance of counsel under the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), and ask if the defendant has shown that his counsel's performance was deficient and prejudiced his case. *State v. White*, 2001 MT 149, ¶ 11, 306 Mont. 58, 30 P.3d 340 (citing *Hagen v. State*, 1999 MT 8, ¶ 10, 293 Mont. 60, 973 P.2d 233).

¶30 However, when ineffective assistance of counsel claims are raised on direct appeal, we first consider whether the claims are more appropriately addressed in a post-conviction relief proceeding. *See e.g. State v. Kougl*, 2004 MT 243, ¶ 14, 323 Mont. 6, 97 P.3d 1095. Because our review of ineffective assistance of counsel claims is subject to the "strong presumption" that counsel's actions are "within the wide range of reasonable professional assistance," a record which is silent about the reasons for the attorney's actions or omissions seldom provides sufficient evidence to rebut this presumption. *White*, ¶ 13 (citing *State v. Langford*, 248 Mont. 420, 432-33, 813 P.2d

15

936, 946 (1991)). Thus, if the record fails to answer the question "why" counsel did or did not take the actions constituting the alleged ineffective assistance, *White*, ¶ 20, the claims are better raised by a petition for post-conviction relief where the record can be more fully developed, unless " 'no plausible justification' " exists for defense counsel's actions or omissions, *Kougl*, ¶¶ 14-15 (quoting *State v. Jefferson*, 2003 MT 90, ¶ 50, 315 Mont. 146, 69 P.3d 641).

¶31 Here, the record is silent about why defense counsel failed to challenge the show-up identification, warrantless arrest of Sartain, admission of Sartain's statements following his arrest, or the prosecutor's allegedly improper remarks during trial and in closing argument. We have noted that "omissions of trial counsel frequently are ill-suited for direct appeal" because often " 'the record does not reflect counsel's reasons for failing to object.' " *State v. Meyers*, 2007 MT 230, ¶ 10, 339 Mont. 160, 168 P.3d 645 (quoting *St. Germain*, ¶ 35). Further, there exists at least a plausible justification for the attorney's omissions, as a "multitude of outside factors" may have led defense counsel to allow the admission and use of this evidence without objection, including believing the grounds for the objection were meritless or were capable of being effectively discredited on cross-examination. *Kougl*, ¶ 19. Unlike the situation in *Kougl*, where defense counsel failed to ask for a statutorily provided and favorable jury instruction, counsel's failures here have at least a plausible, though "not necessarily 'actual,' " justification. *Kougl*, ¶¶ 19-20. We conclude that Sartain's ineffectiveness claims cannot be reviewed on direct

16

appeal and dismiss them without prejudice to raising them in a post-conviction proceeding.

¶32 Affirmed.

/S/ JIM RICE

We concur:

/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ MICHAEL E WHEAT
/S/ JAMES C. NELSON