FILED

03/15/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0717

DA 19-0717

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 55N

STATE OF MONTANA,

     Plaintiff and Appellee,

   v.

LYNDSEY MAE LALICKER,

     Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC 19-80-B
Honorable Rienne H. McElyea, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

         Chad Wright, Appellate Defender, Deborah S. Smith, Assistant Appellate
Defender, Helena, Montana

     For Appellee:

         Austin Knudsen, Montana Attorney General, Roy Brown, Assistant
Attorney General, Helena, Montana

         Marty Lambert, Gallatin County Attorney, Jaydan D. Johnson, Deputy
County Attorney, Bozeman, Montana

Submitted on Briefs:  February 9, 2022

Decided:  March 15, 2022

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Defendant and Appellant Lyndsey Mae Lalicker (Lalicker) appeals from her jury convictions and the subsequent November 18, 2019 Sentencing Order of the Eighteenth Judicial District Court, Gallatin County, finding her guilty of, and sentencing her for, two counts of misdemeanor Interference with Parent-Child Contact. We affirm.

¶3 On appeal, Lalicker challenges the sufficiency of the evidence to support her convictions. Specifically, she asserts the State "presented no evidence that [Lalicker] knowingly or purposely prevented, obstructed, or frustrated [father's] contact with [their child] on the two days in question."

¶4 We review whether evidence is sufficient to support a conviction de novo. *State v. Boyd*, 2021 MT 323, ¶ 12, 407 Mont. 1, 501 P.3d 409. The inquiry is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Boyd*, ¶ 12. The question is whether sufficient evidence exists to support the verdict, not whether the evidence could have supported a different result. *State v. Daniels*, 2019 MT 214, ¶ 42, 397 Mont. 204, 448 P.3d 511.

¶5 Section 45-5-631(1), MCA, provides:

A person who has been granted parent-child contact under a parenting plan commits the offense of interference with parent-child contact if the person knowingly or purposely prevents, obstructs, or frustrates the rights of another person entitled to parent-child contact under an existing court order.

Lalicker was charged with two misdemeanor counts of interference with parent-child contact, one alleged to have been committed on December 31, 2017, and one alleged to have been committed on January 7, 2018. Lalicker and Luke Oyler (Oyler) are the parents of L.L. Since L.L's birth, they have engaged in contentious, ongoing litigation regarding the parenting of their child. Ultimately, the court handling their parenting plan action issued a Parenting Plan which provided each Lalicker and Oyler parenting time with their child and provided for a graduated parenting schedule which gradually increased Oyler's parenting time.[1] Multiple disputes arose as to the parenting plan such that the Standing Master appointed a parenting coordinator, K.C. McLaughlin (McLaughlin), to assist the parties to progress to implement the final parenting plan. On December 29, 2017, the Standing Master ordered, "[t]he parties shall comply with Ms. McLaughlin's directives and scheduling of parenting time on time and as scheduled." The District Court subsequently confirmed this order and reiterated, "the parties will comply with [McLaughlin's] directives." On December 29, 2017, McLaughlin emailed this Order to the parties and advised that a child exchange would occur the following day at the Law and Justice Center in Bozeman. Lalicker confirmed receipt of the email and advised she was out of town and

---

[1] By December 2017, the parties had progressed to between Sections 5D and 5E of the Parenting Plan. Section 5D provided Oyler with one five-hour unsupervised visit per week and Section 5E provided him with two five-hour visits per week, with which Lalicker was ordered to "cooperate fully."

sought advice "so I can follow your directives." McLaughlin then rescheduled the child exchange to December 31, 2017, to permit Lalicker time to return to Bozeman to accomplish the exchange. Lalicker responded that future correspondence should be sent to her attorney. Oyler was present for the scheduled exchange on December 31, 2017, but Lalicker did not appear with L.L., depriving Oyler of his contact with L.L. on that date. McLaughlin likewise advised the parties Oyler would exercise parenting time on January 7, 2018. Oyler, McLaughlin, and Gallatin County Sheriff's Office Captain Wagner were present for the scheduled exchange on January 7, 2018. Again, Lalicker did not appear with L.L. for this scheduled child exchange, depriving Oyler of his contact with L.L. on that date.

¶6 At trial, Lalicker admitted she was aware of the scheduled visits of December 31, 2017, and January 7, 2018 and that she did not bring L.L. for the scheduled exchanges. Lalicker asserted Oyler was not entitled to the visit on December 31, 2017, and she did not recognize McLaughlin's authority to schedule a visit on January 7, 2018, asserting such to violate the parenting plan.

¶7 From our review of the record, when viewed in the light most favorable to the State, sufficient evidence was presented to support Lalicker's convictions for interference with parent-child contact in violation of § 45-5-631, MCA. The State proved, and Lalicker does not contend otherwise, that both Lalicker and Oyler were granted and entitled to parent-child contact under the court-ordered Parenting Plan. Oyler testified as to the

4

difficulties he encountered in securing his parenting contact.[2]  McLaughlin also testified to difficulties in working with Lalicker, testifying the very reason McLaughlin was appointed as the parenting plan coordinator was due to difficulties posed by Lalicker in effectuating Oyler's parenting time.  Section 5D of the parenting plan specifically put Lalicker on notice she was ordered to cooperate fully in scheduling Oyler's parenting time.  McLaughlin testified this language was added to the later phases of the Parenting Plan because in McLaughlin's attempts to obtain Lalicker's cooperation in scheduling parenting time for Oyler, Lalicker was "very hard" to deal with.  Oyler testified, and Lalicker admitted, Lalicker did not appear for the scheduled exchange on December 31, 2017.  Oyler, McLaughlin, and Captain Wagner testified, and Lalicker admitted, that Lalicker also did not appear for the scheduled exchange on January 7, 2018.  Lalicker was able to fully present her asserted explanation for failing to appear for these exchanges which apparently the jury did not find credible.  Given the court-ordered Parenting Plan together with the difficulties Oyler and McLaughlin experienced in effectuating Oyler's parenting time and Lalicker's admission she knew of the scheduled exchanges and she did not bring L.L. for the exchanges on December 31, 2017, and January 7, 2018, a jury could have reasonably found the essential elements of the charged offenses beyond a reasonable doubt—on December 31, 2017, and on January 7, 2018, Lalicker knowingly or purposely prevented,

---

[2] Oyler testified, without objection, that Lalicker had a history of frustrating his contact with L.L. by failing to appear for child exchanges on at least eight prior occasions, telling L.L. he was not her father, and engaging in conduct including following him, videotaping him, and harassing him.

obstructed, or frustrated Oyler's parent-child contact provided for in their court-ordered Parenting Plan by failing to provide L.L. to Oyler for his designated parenting time.

¶8 Lalicker also asserts her defense counsel rendered deficient performance because Lalicker acted under an existing court order or with reasonable cause and, further, the "return of the child" affirmative defense would have relieved her of liability. Lalicker asserts there is no plausible reason her counsel failed to raise these affirmative defenses available under § 45-5-633(1)(b), (c), (2), MCA.

¶9 Claims of ineffective assistance of counsel are mixed questions of law and fact that we review de novo. *State v. Jefferson*, 2003 MT 90, ¶ 42, 315 Mont. 146, 69 P.3d 641.

¶10 Article II, Section 24, of the Montana Constitution and the Sixth Amendment to the United States Constitution, as incorporated through the Fourteenth Amendment, guarantee a defendant the right to effective assistance of counsel. *See State v. Kougl*, 2004 MT 243, ¶ 11, 323 Mont. 6, 97 P.3d 1095. In assessing ineffective assistance of counsel claims, we apply the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *Kougl*, ¶ 11. Under the *Strickland* test, the defendant must (1) demonstrate that "counsel's performance was deficient or fell below an objective standard of reasonableness" and (2) "establish prejudice by demonstrating that there was a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different." *Kougl*, ¶ 11 (quoting *State v. Turnsplenty*, 2003 MT 159, ¶ 14, 316 Mont. 275, 70 P.3d 1234). Courts determine deficient performance based on whether a defendant's counsel acted within the broad "range of competence demanded of attorneys in criminal cases." *Schaff v. State*, 2003 MT 187, ¶ 18, 316 Mont. 453, 73 P.3d 803 (citations omitted).

6

A strong presumption exists that counsel's conduct falls within the wide range of reasonable professional conduct. *Kougl*, ¶ 11.

¶11 When defendants raise ineffective assistance of counsel claims on direct appeal, we first determine whether the claims are more appropriately addressed in a postconviction relief proceeding. *Kougl*, ¶ 14. "[A] record which is silent about the reasons for the attorney's actions or omissions seldom provides sufficient evidence to rebut" the strong presumption counsel's conduct falls within the wide range of reasonable professional conduct. *State v. Sartain*, 2010 MT 213, ¶ 30, 357 Mont. 483, 241 P.3d 1032. If we cannot answer from the record "the question 'why' counsel did or did not take the actions constituting the alleged ineffective assistance, the claims are better raised by a petition for post-conviction relief where the record can be more fully developed, unless 'no plausible justification' exists for the defense counsel's actions or omissions[.]" *Sartain*, ¶ 30 (quoting *Kougl*, ¶¶ 14-15 (internal citation omitted)).

¶12 Section 45-5-633(1)(b), (c), MCA, provides a person does not commit interference with parent-child contact if the person acts "under an existing court order" or "with reasonable cause." Although technically not raised as affirmative defenses, Lalicker effectively presented these defenses to the jury. At trial, Lalicker asserted she was confused about the Parenting Plan and she acted with reasonable cause as she was merely following what she believed the existing Parenting Plan provided. In closing, her counsel aptly argued defenses under § 45-5-633(1)(b), (c), MCA. Although the jury did not give credence to these defenses, we do not find counsel was ineffective in raising and presenting them.

¶13     With regard to the "return of the child" affirmative defense, the record is silent as to the reason counsel did not raise this affirmative defense.  Although the record is silent as to why counsel did not raise the "return of the child" affirmative defense, contrary to Lalicker's position that there are no plausible reasons for her counsel's failure to raise this affirmative defense, the State points out various plausible reasons for her counsel failing to raise this affirmative defense.[3]   We agree with the State that the record before us does not explain why defense counsel did not raise the "return of the child" affirmative defense and such claim, if it should be asserted at all, is better left to postconviction relief.

¶14     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶15     Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR

---

[3] Including that counsel may have reasonably concluded Lalicker never returned L.L. to Oyler as required to raise the defense or that since Lalicker was never arrested but rather given a citation, such defense was not available to her.