FILED

09/30/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0048

DA 23-0048

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 221

LAURENCE DEAN JACKSON, JR.,

      Petitioner and Appellant,

  v.

STATE OF MONTANA,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Seventeenth Judicial District,
In and For the County of Blaine, Cause No. DV-2011-14
Honorable Robert G. Olson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Joseph P. Howard, Joseph P. Howard, P.C., Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Katie F. Schulz,
Assistant Attorney General, Helena, Montana

          Kelsie W. Harwood, Blaine County Attorney, Chinook, Montana

Submitted on Briefs:  August 20, 2025

Decided:  September 30, 2025

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1     Laurence Dean Jackson Jr. appeals from the order of the District Court for the Seventeenth Judicial District, Blaine County, denying his petition for postconviction relief in which he alleged claims of ineffective assistance of counsel. Jackson asserts that the District Court erred in denying his petition without first holding an evidentiary hearing on his claims. Jackson further asserts that the District Court erred in finding no ineffective assistance of counsel and denying him postconviction relief on the merits of his claims.

¶2     We restate the issue on appeal as follows:

*Whether the District Court abused its discretion in denying Jackson's petition for postconviction relief without an evidentiary hearing, pursuant to § 46-21-104(1)(c), MCA.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     On the evening of May 29, 2003, two Blaine County Sheriff's deputies, Deputy Joshua Rutherford and Deputy Loren Janis, responded to a domestic disturbance in Harlem, Montana, involving Jackson. The two deputies pursued Jackson, on foot, through a nearby field. A few minutes later, both Rutherford and Janis were shot. Rutherford died quickly from a gunshot wound to the chest, while Janis was severely injured by a gunshot wound to his forearm. Due to an alleged alcohol-induced blackout, Jackson was unable to recall the events that transpired that evening, leaving Janis as the only eyewitness available to testify at trial.

¶4     A 17-day trial commenced in October 2004. Over three weeks, the jury was presented with approximately 240 pieces of physical evidence and testimony from 53 witnesses, 16 of which were experts. The State's case-in-chief relied heavily on Janis's

2

eyewitness testimony, which the State corroborated with physical evidence. In brief, the State theorized that Rutherford was first on scene and had pursued Jackson into the field. A physical struggle between Rutherford and Jackson ensued, during which Jackson was able to retain Rutherford's Maglite. Shortly after, Janis caught up to Rutherford and the two deputies attempted to physically detain Jackson. Rutherford placed Jackson in an arm hold but ultimately lost control and, during the struggle, Jackson was able to grab Rutherford's Glock from its holster. Jackson then shot Rutherford in the chest and immediately fired upon Janis, striking him in the arm. Jackson and Janis then exchanged fire and Janis began to make his way back towards his patrol vehicle. After Janis radioed in for assistance, Jackson was ultimately detained.

¶5 In response to the State's case-in-chief, Jackson presented a general denial defense. Defense counsel called upon Charles Winters, an expert in police procedures and crime scene management, who testified that Rutherford and Janis acted contrary to Blaine County Sheriff's Office policy and that the Sheriff's Office had made mistakes in preserving the crime scene. Additionally, the defense called on Kay Sweeney, a forensic expert, who opined that the bullet which killed Rutherford had been "tumbling" as a result of hitting an object prior to striking Rutherford. Sweeney theorized that the bullet had been fired by Janis towards Jackson, but that the bullet merely grazed Jackson's abdomen before it ultimately struck Rutherford. In support of this theory, Sweeney pointed to an abdominal wound which Jackson had obtained at some point during the struggle and theorized that it was the result of being grazed by a bullet. Additionally, Sweeney offered testimony to attack the State's analysis of Janis's gunshot wound, opining that it had been self-inflicted,

3

and he stressed the lack of evidence tying Jackson to Rutherford's gun. Specifically, Sweeney pointed out that Jackson's hands had been covered in blood when he arrived at the detention center, and that while Jackson's DNA could not be ruled out as a potential source of blood found on Rutherford's Maglite, no blood was found on the grip of Rutherford's Glock. The State challenged Sweeney's friendly fire theory and his alternative analysis of Janis's gunshot wound on cross-examination and rebuttal.

¶6 On November 5, 2004, Jackson was convicted of deliberate homicide for the death of Rutherford and attempted deliberate homicide for the shooting of Janis. Jackson was sentenced to life imprisonment without parole on both counts and one hundred years without parole as a persistent felony offender. On December 15, 2009, this Court affirmed Jackson's conviction, and his petition for certiorari was denied by the U.S. Supreme Court on May 17, 2010. *State v. Jackson*, 2009 MT 427, 354 Mont. 63, 221 P.3d 1213, *cert. denied,* 560 U.S. 912, 130 S. Ct. 3292 (2010).

¶7 On May 12, 2011, Jackson filed a timely petition for postconviction relief with the District Court, in which Jackson set forth various claims of ineffective assistance of counsel. The District Court assigned substitute counsel to file an amended petition and invited counsel to obtain additional evidence pursuant to § 46-21-201(5), MCA. The District Court issued a *Gillham* order[1] on January 10, 2012, and an order to vacate briefing deadlines on February 27, 2012.

---

[1] *In re Gillham*, 216 Mont. 279, 704 P.2d 1019 (1985). A *Gillham* order is authorization by the court for defense counsel to respond to a defendant's allegations of ineffective assistance of counsel, allowing counsel to disclose otherwise privileged attorney-client communications, as necessary to allow the court to "ascertain the truth of such allegations." An attorney ordered to

4

¶8    In August 2014, Jackson contacted Tom Griffin, an expert in reconstructing shooting incidents. Griffin generated a report in July 2018 analyzing statements Janis made during his deposition and whether the statements were supported by the evidence. The report concludes that while most of Janis's deposition statements could be neither confirmed nor refuted, nine of his statements were supported by the evidence, and just one statement was inconsistent with the evidence. According to Griffin's report, Janis had stated in his deposition that he heard three gunshots at the time he and Rutherford were shot, but only two cartridge cases from Rutherford's gun were found in that location. Griffin's report states, "[t]he only two fired cartridge cases from Grid 12 were fired in Deputy Rutherford's firearm [which] suggests that at least some of the fighting between the deputies and Mr. Jackson, and possibly the two-wound producing gunshots" occurred in Grid 12.

¶9    On July 30, 2018, Jackson filed an amended petition for postconviction relief asserting cumulative error, as well as six claims of ineffective assistance of counsel. On December 5, 2022, after receiving both the State's response and Jackson's reply, the District Court denied Jackson's petition for postconviction relief without an evidentiary hearing. The District Court analyzed Jackson's claims of ineffective assistance of counsel under the two-part test articulated by the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), and concluded that while Jackson had exhaustively

---

respond pursuant to a *Gillham* order is immune from disciplinary proceedings and charges of malpractice for all information, testimony, and documents necessarily provided in response to the allegations of ineffective assistance of counsel. *See Marble v. State*, 2007 MT 98, ¶ 4, 337 Mont. 99, 169 P.3d 1148.

5

cited law which he believed to support his petition, he failed to set forth specific facts supporting grounds for relief, as required under § 46-21-104(1)(c), MCA.

¶10 On appeal, Jackson asserts that his 273-page petition, accompanied by a 956-page brief, satisfy the procedural requirements set forth in § 46-21-104(1)(c), MCA. Thus, Jackson argues, the District Court abused its discretion in denying his petition without an evidentiary hearing. Additionally, Jackson argues that the District Court erred in denying his petition for postconviction relief on the merits.

## STANDARD OF REVIEW

¶11 Discretionary rulings in postconviction relief proceedings, including rulings related to whether to hold an evidentiary hearing, are reviewed for an abuse of discretion. *Hamilton v. State*, 2010 MT 25, ¶ 7, 355 Mont. 133, 226 P.3d 588. In reviewing a district court's denial of a petition for postconviction relief, we determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *Hamilton*, ¶ 7. Claims of ineffective assistance of counsel present mixed questions of law and fact that we review de novo. *State v. Santoro*, 2019 MT 192, ¶ 11, 397 Mont. 19, 446 P.3d 1141.

## DISCUSSION

¶12 *Whether the District Court abused its discretion in denying Jackson's petition for postconviction relief without an evidentiary hearing, pursuant to § 46-21-104(1)(c), MCA.*

¶13 Statutes governing postconviction relief govern the sufficiency of a defendant's postconviction claims. Section 46-21-201(1)(c), MCA; *see Herman v. State*, 2006 MT 7, ¶ 15, 330 Mont. 267, 127 P.3d 422. The procedural requirements set forth in

6

§ 46-21-104(1)(c), MCA, require a petitioner for postconviction relief to "identify all facts supporting the grounds for relief set forth in the petition and have attached affidavits, records, or other evidence establishing the existence of those facts." A district court may dismiss a petition for postconviction relief without conducting an evidentiary hearing if the petition fails to satisfy the procedural threshold set forth in § 46-21-104(1)(c), MCA. *Herman*, ¶ 15. "A district court may also dismiss a petition for post-conviction relief without ordering a response or conducting an evidentiary hearing if the petition, files and records 'conclusively show that the petitioner is not entitled to relief.'" *Heath v. State*, 2009 MT 7, ¶ 16, 348 Mont. 361, 202 P.3d 118 (quoting § 46-21-201(1)(a), MCA). Alternatively, a district court "may order a response and, after reviewing the response, 'dismiss the petition as a matter of law for failure to state a claim for relief or it may proceed to determine the issue.'" *Herman*, ¶ 15 (quoting § 46-21-201(1)(a), MCA). Accordingly, "[i]t is not error to deny an application for post-conviction relief without an evidentiary hearing if the allegations are without merit or would otherwise not entitle the petitioner to relief." *Coleman v. State*, 194 Mont. 428, 433, 633 P.2d 624, 627 (1981).

¶14 This Court has recognized that "postconviction proceedings are not a fishing expedition or discovery device in which a petitioner, through broad allegations in a verified petition, may establish a right to an evidentiary hearing." *Robinson v. State*, 2010 MT 108, ¶ 18, 356 Mont. 282, 232 P.3d 403. Specifically, for postconviction claims of ineffective assistance of counsel, we have held that such claims "must be grounded upon facts which appear in or are easily deduced from the record and which go beyond the mere conclusory

7

allegations in the defendant's affidavit." *Kelly v. State*, 2013 MT 21, ¶ 9, 368 Mont. 309, 300 P.3d 120 (quoting *State v. Lewis*, 177 Mont. 474, 485, 582 P.2d 346, 352-53 (1978)).

¶15    In assessing claims of ineffective assistance of counsel, this Court applies the two-prong test articulated by the U.S. Supreme Court in *Strickland. Hamilton*, ¶ 12. The two-prong test of *Strickland* requires a petitioner to show (1) that counsel's performance was constitutionally deficient, and (2) that counsel's deficient performance prejudiced the defense such that it deprived the petitioner of a fair trial. *Hamilton*, ¶ 12.

¶16    Under *Strickland*'s first prong, the question that must be answered is "whether counsel's conduct fell below an objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances." *Whitlow v. State*, 2008 MT 140, ¶ 20, 343 Mont. 90, 183 P.3d 861. The petitioner must show that counsel's errors in performing were so serious that counsel failed to function as the "counsel" guaranteed to the defendant by the Sixth Amendment. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. However, "[w]hen scrutinizing whether counsel was deficient, this Court does not analyze the conduct with hindsight; instead, we presume that counsel's conduct falls within a range of acceptable professional assistance, and a defendant must overcome that presumption." *Oliphant v. State*, 2023 MT 43, ¶ 29, 411 Mont. 250, 525 P.3d 1214. "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. A reviewing court should not second guess objectively reasonable tactical decisions. *Whitlow*, ¶ 19. The mere fact that another lawyer may have handled a matter differently is not enough to establish ineffective assistance of counsel. *Stevens v. State*, 2007 MT 137, ¶ 27, 337 Mont. 400, 162 P.2d 82. Further, the

8

burden of rebutting the presumption that counsel performed reasonably "rests squarely on the defendant" and "[i]t should go without saying that the absence of evidence cannot overcome [it]." *Burt v. Titlow*, 571 U.S. 12, 23, 134 S. Ct. 10, 18 (2013). "In fact, even if there is reason to think that counsel's conduct was 'far from exemplary,' a court still may not grant relief if '[t]he record does not reveal' that counsel took an approach that no competent lawyer would have chosen." *Dunn*, 594 U.S. 731, 739, 141 S. Ct. 2405, 2410 (2021) (quoting *Titlow*, 571 U.S. at 23-24, 134 S. Ct. at 18).

¶17 Under *Strickland*'s second prong, the petitioner must demonstrate prejudice by showing that a reasonable probability exists that, but for counsel's deficient performance, the result of the proceeding would have been different. *Heath*, ¶ 17 (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

¶18 Accordingly, to satisfy the requirements set forth in § 46-21-104(1)(c), MCA, a petition for postconviction relief based upon a claim of ineffective assistance of counsel must identify established facts showing (1) counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that the result at trial would have been different had counsel's performance not been deficient. A petition that merely alleges ineffective assistance of counsel without setting forth established facts showing both deficient performance and prejudice may be dismissed without an evidentiary hearing pursuant to §§ 46-21-104(1)(c) and -201(1)(a), MCA.

¶19 Jackson's petition for postconviction relief alleges ineffective assistance of counsel based on counsel's (1) failure to consult and retain appropriately qualified experts to

9

effectively assist in Jackson's defense; (2) failure to present a coherent, compelling, and effective defense strategy that was developed and repeated from voir dire through summation; (3) failure to present a coherent, compelling, and effective summation; (4) failure to object or otherwise take curative measures regarding evidence of Jackson's criminal history; and (5) failure to timely object to portions of the State's summation that constituted prosecutorial misconduct. Additionally, Jackson asserts ineffective assistance of counsel to the extent his claims could have been raised on appeal, and, alternatively, Jackson asserts cumulative errors which prejudiced Jackson's right to a fair trial.

¶20 On appeal, Jackson broadly asserts that his petition sets forth 270 pages of plainly identified facts and record cites, satisfying the postconviction relief pleading requirements set forth in § 46-21-104(1)(c), MCA, and entitling him to an evidentiary hearing on his claims. Jackson also asserts that he is entitled to postconviction relief on the merits of his claim regarding counsel's failure to consult and retain appropriately qualified experts, as well as his claim regarding counsel's failure to present a coherent, compelling, and effective defense strategy throughout the trial process. Jackson does not substantively argue or provide any legal analysis as to the District Court's denial of his five other claims. We therefore limit our review on appeal to Jackson's claims regarding counsel's performance with respect to expert witnesses and counsel's performance with respect to defense strategies.

¶21 Jackson asserts that a forensic expert was essential to his defense and that counsel unreasonably retained, consulted, and relied upon, a single forensic expert, Kay Sweeney. Jackson argues that Sweeney was not qualified as a forensic expert and that Sweeney's

10

opinion testimony was "fundamentally flawed." Jackson further asserts that counsel failed to adequately research and screen Sweeney, and that counsel willfully or negligently kept themselves in the dark regarding the basis for Sweeney's opinion. In support of these claims, Jackson's petition sets forth numerous facts regarding Sweeney's certifications, education, and experience—or lack thereof—as well as testimony from the State's experts "debunking" Sweeney's opinions and critiquing his experience.

¶22 While Jackson asserts counsel was deficient in recruiting and vetting Sweeney, he fails to present any facts regarding counsel's recruiting and vetting procedures. Nor does Jackson provide any facts to support his conclusion that counsel's conduct fell outside the wide range of reasonable professional assistance. Rather, Jackson points to the State's attack on Sweeney's credentials and its "debunking" of Sweeney's theories to support his assertion that Sweeney was incompetent and that counsel's reliance on him was therefore unreasonable. But the circumstances of Sweeney's cross-examination fail to show that counsel was somehow derelict in retaining and relying on Sweeney as an expert. As the District Court stated, "[i]n virtually every case there may be an expert that has better credentials or greater knowledge in a particular subject." The trial court considered Sweeney's qualifications and experience and determined Sweeney had sufficient knowledge to provide opinion testimony under M. R. Evid. 702. Jackson's petition fails to set forth any established facts to support his assertion that counsel was deficient in recruiting and vetting Sweeney.

¶23 Similarly, Jackson asserts counsel kept themselves "in the dark" regarding Sweeney's report and that counsel's reliance on Sweeney's "flawed" report was

11

unreasonable. However, once again, Jackson fails to set forth established facts showing deficient performance. To the contrary, Jackson's petition establishes that counsel was fully aware of the basis for Sweeney's report and was also aware of the report's limitations. In fact, counsel retained a forensic odontologist, Dr. Allan Currie, after Sweeney explained that it was important to the case and that he was not qualified in the field of forensic dentistry. While Jackson acknowledges that counsel's decision not to call on Dr. Currie at trial was likely due to Dr. Currie's testimony being consistent with the State's expert, Jackson asserts this demonstrates that counsel had unreasonably relied on Sweeney's "flawed" theory. However, the retention of Dr. Currie and counsel's decision to not call upon him for testimony demonstrates that counsel's decision to rely on Sweeney's report was strategic and made while fully aware of the report's limitations.

¶24 Accordingly, while Jackson sets forth hundreds of pages of facts, many of which relate to Sweeney's testimony, he fails to identify any established facts showing that counsel's retention of and reliance upon Sweeney as a forensic expert was unreasonable under the prevailing professional norms. Thus, Jackson's claim fails to satisfy the requirements set forth in § 46-21-104(1)(c), MCA.

¶25 However, even if counsel's retention and reliance on Sweeney as an expert was deficient, Jackson still fails to demonstrate that he was prejudiced by counsel's conduct. Jackson asserts that counsel's failure to consult and retain "qualified forensic experts" was fatal to his defense and had a "qualified forensic expert" such as Griffin testified, the result of the trial would have been different. Yet, for a petitioner to succeed on a claim of ineffective assistance of counsel based on counsel's failure to present expert testimony, the

12

petitioner "must do more than merely speculate that such an expert exists or that the expert would testify persuasively to an alternate diagnosis." *Oliphant*, ¶ 41 (citing *Wilkes v. State*, 2015 MT 243, ¶ 27, 380 Mont. 388, 355 P.3d 755). Additionally, a petitioner must demonstrate that the expert testimony would have overcome the State's expert testimony "to the extent of showing a reasonable probability that the outcome of the trial would have been different." *Elliot v. State*, 2005 MT 10, ¶ 10, 325 Mont. 345, 106 P.3d 517.

¶26 In *Elliot*, we held that a petitioner failed to show they were prejudiced by counsel's failure to secure an expert witness where the petitioner failed to identify an expert who would have testified affirmatively to the petitioner's alternative theory at trial, "much less demonstrate[] that the testimony . . . would have overcome the testimony of the State's four expert witnesses." *Elliot*, ¶ 10. We agreed with the district court's conclusion that "any assertion that the mere presence of an expert for the defense would have made a difference [] is mere speculation." *Elliot*, ¶ 10.

¶27 However, in *Wilkes*, we determined that a district court erred in denying an ineffective assistance of counsel claim as speculative where the petitioner set forth expert testimony and evidence of several alternative defense theories which the petitioner argued would have been presented at trial had counsel adequately prepared. *Wilkes*, ¶¶ 25-27. The petitioner identified multiple experts counsel could have called at trial to refute the state's case, had counsel been adequately prepared, and provided the court with the experts' written opinions of what their testimony would have been. *Wilkes*, ¶ 27. Thus, unlike *Elliot*, "there was no need for the court to speculate." *Wilkes*, ¶ 27.

¶28 Here, just as in *Elliot*, Jackson fails not only to demonstrate the availability of expert testimony on his alternative theory, but he also fails to demonstrate that such testimony would undermine the results of his trial. While Jackson asserts that a "qualified forensic expert," such as Griffin, would have testified had counsel adequately performed, Jackson fails to show that Griffin, or another expert satisfying his qualification standards, was available to testify during his 2004 trial. Further, Jackson points to Griffin's report to establish the content of the testimony, but such a conclusion is speculative being that Griffin's report was conducted in 2018 and relies on sources published years after Jackson's 2004 trial.

¶29 Jackson also fails to demonstrate how the testimony of a "qualified forensic expert," such as Griffin, would show a reasonable probability that the outcome at trial would be different. Unlike *Wilkes*, Jackson has not set forth an alternative defense theory to refute the State's case. Rather, Griffin's report merely verifies key elements of the State's theory: Rutherford could not have shot himself; Rutherford's gun was fired twice in Grid 12 where large pools of blood from both deputies were found; and the location of evidence such as the shell casings, asp, and pepper spray cannister all matched the events as described by Janis.

¶30 Accordingly, Jackson's petition fails to set forth established facts showing that he was prejudiced by counsel's retention of and reliance upon Sweeney as a forensic expert. Thus, even if counsel's performance was deficient, this claim fails to satisfy the requirements of § 46-21-104(1)(c), MCA.

14

¶31 We next consider whether counsel was rendered ineffective by failing to present a coherent, compelling, and effective defense strategy throughout the trial. Specifically, Jackson argues that counsel was rendered ineffective for not emphasizing, throughout the entirety of trial, the fact that no blood was found on the grip of Rutherford's gun when Jackson's hands had been covered in blood upon his arrival at the detention center, and Jackson's blood could not be ruled out from the sample found on the Maglite. Jackson refers to this as the "glaring discrepancy" theory. To show that counsel failed to adequately develop this theory, Jackson points to the theory's prevalence throughout counsel's post-trial arguments, which Jackson argues is in stark contrast to the minimal references counsel made to it throughout voir dire and the evidentiary phase of Jackson's trial. Jackson also points to counsel's failure to have the State's witnesses address the discrepancy on cross-examination. While Jackson acknowledges that Sweeney's testimony addressed the lack of blood found on the grip of the gun in light of Jackson's bloodied hands, Jackson asserts that Sweeney did not effectively articulate the "glaring discrepancy" as being inconsistent to the State's theory.

¶32 Once again, Jackson has failed to set forth established facts showing counsel's performance was constitutionally deficient. "There are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client the same way." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. While counsel has a duty to make either a reasonable investigation or a reasonable decision that makes a particular investigation unnecessary, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable;

15

and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91, 104 S. Ct. at 2066.

¶33 Here, Jackson merely concludes that counsel failed to investigate the discrepancy theory prior to trial being that counsel strongly emphasized it post-trial. There are, however, numerous strategic reasons as to why counsel may have chosen not to emphasize this theory at trial; the primary reason being that the presence of blood on Jackson's hands while at the detention center does not mean Jackson had blood on his hands when he held the Glock. Given the nature of Jackson's injuries and the fact that multiple witnesses saw Jackson touching his abdominal wound after Rutherford was shot but before Jackson was detained, it can be presumed that counsel's decision not to emphasize the discrepancy was strategic. Counsel discussed the lack of blood found on the gun's grip and Jackson's bloodied hands and incorporated the discrepancy into its general denial theory. Counsel was clearly aware of the theory and their failure to develop the theory further was premised on strategy, not a failure to investigate.

¶34 Accordingly, Jackson's claim fails to set forth established facts showing counsel's defense strategy was constitutionally deficient. Thus, Jackson's claim fails to satisfy the requirements set forth in § 46-21-104(1)(c), MCA.

¶35 However, even if Jackson were able to demonstrate that counsel's investigation was constitutionally deficient, Jackson's claim still fails because he has not set forth facts showing prejudice as a result of counsel's conduct. Jackson asserts that there is a reasonable probability that, had counsel not failed to develop the "glaring discrepancy"

16

theory, the result at trial would have been different. Jackson relies on Griffin's report for support, which, according to Jackson, severely undermines the State's case against Jackson. However, this argument is based entirely on speculation, not established facts.

¶36 As previously discussed, Jackson has not established that Griffin, or another expert like Griffin, would have been available to testify at the time of trial, or that the report itself would have been available at the time of trial being that it relies on sources published post-trial. Further, Jackson completely fails to show how further development of the "glaring discrepancy" theory could overcome the State's overwhelming evidence of his guilt, such that a reasonable probability that the outcome of the trial would have been different exists.

¶37 Jackson relies on *Foster v. Lockhart*, 9 F.3d 722 (8th Cir. 1993) to support his argument that counsel's failure to effectively develop a theory resulted in prejudice, but the facts are clearly distinguished. In *Foster*, the petitioner argued that counsel was rendered ineffective for failing to seek and present evidence demonstrating the petitioner's impotency when the petitioner was on trial for rape. *Foster*, 9 F.3d at 726-27. To support their claim, the petitioner presented uncontradicted medical evidence showing they were impotent and physically incapable of committing the crime in the manner that the victim and state alleged at trial. *Foster*, 9 F.3d at 727. The Eighth Circuit affirmed the district court's grant of postconviction relief, finding a reasonable probability that the trial's outcome would have been different had counsel presented evidence of the petitioner's impotency.

¶38 Here, unlike *Foster*, counsel presented Jackson's "glaring discrepancy" theory; it is not new, exonerating evidence that counsel failed to investigate. Counsel informed the jury that Jackson's hands had been covered in blood by the time he arrived at the detention center and that no blood was found on the grip of Rutherford's Glock. Further, the "glaring discrepancy" theory does not refute the State's theory of the case. As previously discussed, there are many reasonable explanations for why blood was on Jackson's hands at the detention center but not on the grip of the Glock.

¶39 Accordingly, Jackson fails to set forth established facts showing that had counsel further developed the "glaring discrepancy" theory throughout trial, a different result would have occurred. The State presented a compelling case. Even if counsel failed to adequately investigate or develop theories of the case, Jackson fails to set forth established facts showing prejudice as a result of counsel's conduct.

## CONCLUSION

¶40 We conclude that Jackson's petition for postconviction relief fails to satisfy the requirements of § 46-21-104(1)(c), MCA, by failing to set forth established facts supporting his claims of ineffective assistance of counsel. Accordingly, the District Court did not abuse its discretion by denying Jackson's petition for postconviction relief without holding an evidentiary hearing.

¶41 Affirmed.

/S/ INGRID GUSTAFSON

18

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M BIDEGARAY
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA