FILED

12/09/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0169

DA 23-0169

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 282

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

KAYLEA L. MULLENDORE,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 20-1202
Honorable Colette B. Davies, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Carolyn Gibadlo, Attorney at Law, Missoula, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Christine Hutchison, Assistant Attorney General, Helena, Montana

      Scott D. Twito, Yellowstone County Attorney, Victoria Callender, Amanda Tiernan, Deputy County Attorneys, Billings, Montana

Submitted on Briefs:  October 8, 2025

Decided:  December 9, 2025

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    Appellant Kaylea L. Mullendore ("Mullendore") appeals from the jury verdict finding her guilty of negligent homicide, criminal endangerment, and driving while her privilege to do so was suspended; and the subsequent written judgment entered by the Thirteenth Judicial District Court, Yellowstone County, on January 17, 2023. We affirm.

¶2    We restate the issues on appeal as follows:

*Issue One: Whether the District Court erred when it denied Mullendore's motion to dismiss the negligent homicide charge based on insufficient evidence.*

*Issue Two: Whether Mullendore's counsel provided ineffective assistance of counsel.*

*Issue Three: Whether the District Court abused its discretion by allowing Officer Cook's and Officer DeNio's testimony.*

*Issue Four: Whether the District Court abused its discretion by denying Mullendore's motion for a mistrial when Mullendore declined a curative instruction following Mullendore's mother's testimony that she had adopted A.R.*

*Issue Five: Whether the District Court erred by ordering Mullendore to pay Spencer, Sr. restitution for lost wages.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    On November 23, 2019, Mullendore was driving an Acura with three children in the car. Two of the children were Mullendore's children: Spencer, aged 5, and A.R., aged 6. Mullendore's niece, T.K. aged 5, was also in the Acura. T.K. was placed in a booster seat in the front passenger seat, and Spencer and A.R. were placed in the backseat with no car seats.

¶4    On the same day, there was an accident between a different vehicle and a van on the hill of 32nd Street South. Mullendore approached this accident site in the Acura. Shortly

2

thereafter, Joyce Duncan ("Duncan") rearended the Acura in her Chevy Uplander. Duncan was traveling approximately 31 miles per hour at the time of the crash. When Duncan exited her vehicle, the Acura was gone.

¶5 Multiple witnesses testified at trial that the Acura took off down the hill at a high rate of speed. One witness noted that the Acura "rev[ed] their engine really loud" and the "tires screeched and took off down the hill." He told law enforcement that the Acura "accelerated really fast" and "straight pegged," meaning "[t]he pedal is as far as it can go down. As much gas as you can basically give a car." The circumstances made this witness think the driver of the Acura was running. Another witness testified that the Acura "got pushed forward a little bit" but then "accelerated at a rapid pace." He explained that the Acura slowed after being rearended then accelerated as if two separate things happened. He thought the driver was "speeding off, wanting to get out of there." Another witness believed Mullendore slammed on her brakes then slammed on the gas.

¶6 The Acura went off the road into a ditch and then came out of the ditch towards oncoming traffic. A teenager was driving a Yukon up 32nd Street at this moment. Mullendore swerved into the northbound lane. The Yukon driver turned the wheel slightly to the right to protect another teenager in the passenger seat. Mullendore collided directly with the Yukon.

¶7 As a result of the accident, Spencer was life flighted to Salt Lake City where he died from fatal blunt-force injuries sustained during the crash. A.R. suffered various injuries,

3

including significant injury to her spinal cord leaving her permanently paralyzed below her belly button.

¶8    The State charged Mullendore with vehicular homicide while under the influence or in the alternative, negligent homicide; negligent vehicular assault or in the alternative, criminal endangerment; various other counts of criminal endangerment; and driving while her privilege to do so was suspended or revoked.  The parties dispute whether Mullendore was intoxicated at the time of the crash.

¶9    At the time of the crash, Mullendore's license was suspended and she was not permitted to have unsupervised contact with her children because of involvement with Child Protective Services.  Prior to trial, the District Court ordered that testimony on Mullendore's restricted parenting rights be limited.

¶10    Mullendore's defense theory at trial was that the initial impact from being rearended by Duncan in her Uplander was what caused the Acura to accelerate and collide with the Yukon.  The State's theory was that Mullendore intentionally fled the scene after being rearended because she was in custody of the children when she was not permitted to be. Mullendore specifically contends that the State did not meet its burden in proving Mullendore was the cause-in-fact of Spencer's death.

¶11    Officer Cook, the primary crash investigator, testified on behalf of the State.  He opined on the speed and trajectory of the Acura.  Officer DeNio, another member of the crash investigation team, also testified on behalf of the State.  She offered additional

testimony on the trajectory of the Acura. Mullendore challenges various parts of their testimony on appeal.

¶12 At the close of a six-day jury trial, the jury found Mullendore guilty of negligent homicide, criminal endangerment, and driving while her privilege to do so was suspended. Mullendore raises various issues, each of which are discussed below.

¶13 Additional facts are provided herein where necessary.

## STANDARD OF REVIEW

¶14 We review de novo a district court's denial of a defendant's motion to dismiss for insufficient evidence. *State v. Bowen*, 2015 MT 246, ¶ 21, 380 Mont. 433, 356 P.3d 449. "We review de novo whether sufficient evidence supports a conviction." *State v. Christensen*, 2020 MT 237, ¶ 11, 401 Mont. 247, 472 P.3d 622. When considering a challenge based on the sufficiency of the evidence, we determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Christensen*, ¶ 11.

¶15 "Only record-based ineffective assistance of counsel claims are considered on direct appeal." *State v. Howard*, 2011 MT 246, ¶ 18, 362 Mont. 196, 265 P.3d 606. Ineffective assistance of counsel claims are mixed questions of law and fact, which we review de novo. *State v. Santoro*, 2019 MT 192, ¶ 11, 397 Mont. 19, 446 P.3d 1141.

¶16 This Court reviews a district court's determination regarding the qualification and competency of expert witnesses for abuse of discretion. *State v. Harris*, 2008 MT 213, ¶ 6, 344 Mont. 208, 186 P.3d 1263. A district court abuses its discretion if "it acts arbitrarily,

5

without employing conscientious judgment, or exceeds the bounds of reason, resulting in substantial injustice." *Harris*, ¶ 6 (internal quotations omitted).

¶17 We review a district court's denial of a motion for mistrial for abuse of discretion. *State v. Gunderson*, 2010 MT 166, ¶ 91, 357 Mont. 142, 237 P.3d 74.

¶18 Finally, we review the legality of a restitution obligation for correctness. *State v. Lodahl*, 2021 MT 156, ¶ 11, 404 Mont. 362, 491 P.3d 661.

## DISCUSSION

¶19 *Issue One: Whether the District Court erred when it denied Mullendore's motion to dismiss the negligent homicide charge based on insufficient evidence.*

¶20 Mullendore argues that the District Court erred in denying her motion to dismiss the negligent homicide charge. Specifically, Mullendore contends that there was insufficient evidence that her actions were the cause-in-fact of Spencer's death: she argues that she did not cause Spencer's death by buckling him in an adult seatbelt and that Duncan's act of rearending the Acura was an intervening, superseding act that broke any causal chain between Mullendore's actions and Spencer's death. After reviewing the evidence in the light most favorable to the prosecution, we conclude that any rational juror could have found that Mullendore met the essential elements of negligent homicide beyond a reasonable doubt. *Christensen*, ¶ 11.

¶21 When this Court considers the denial of a motion to dismiss for insufficient evidence, we "assume every fact the jury could have deduced from the evidence and will not substitute our own judgment for that of the jury." *Bowen*, ¶ 30. A conviction may be based entirely on circumstantial evidence, and conflicting witness testimony does not make

6

the evidence insufficient to support a conviction. *Bowen*, ¶ 30. Testimony from a single witness, which the jury believes, is sufficient to prove any fact. *Bowen*, ¶ 30.

¶22 Mullendore was charged with negligent homicide in violation of § 45-5-104, MCA. "A person commits the offense of negligent homicide if the person negligently causes the death of another human being." Section 45-5-104(1), MCA. "Negligently" is defined as:

> [A] person acts negligently with respect to a result or to a circumstance described by a statute defining an offense when the person consciously disregards a risk that the result will occur or that the circumstance exists or when the person disregards a risk of which the person should be aware that the result will occur or that the circumstance exists. The risk must be of a nature and degree that to disregard it involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation. "Gross deviation" means a deviation that is considerably greater than lack of ordinary care. Relevant terms, such as "negligent" and "with negligence", have the same meaning.

Section 45-2-101(43), MCA. "A defendant's conduct is considered the cause-in-fact of the victim's death if" the event would not have occurred but for that conduct." *State ex rel. Kuntz v. Mont. Thirteenth Jud. Dist. Ct.*, 2000 MT 22, ¶ 37, 298 Mont. 146, 995 P.2d 951 (quotation omitted). Thus, for a conviction of negligent homicide, the State is required to show that Mullendore's negligent conduct was the cause-in-fact of Spencer's death beyond a reasonable doubt. *See Bowen*, ¶ 33.

¶23 Mullendore highlights that at trial, the State referenced the American Pediatric Association's seatbelt recommendations to show that Mullendore was negligent by not properly restraining Spencer, who was under 6 years old and weighed less than 60 pounds at the time of the crash. Section 61-9-420, MCA, provides that a "passenger who is under 6 years of age and weighs less than 60 pounds must be transported and properly restrained

7

in a child safety restraint." However, Mullendore, citing § 61-13-106, MCA, argues that failure to comply with car seat requirements does not constitute negligence. Indeed, § 61-13-106, MCA, states that "failure to comply with 61-13-103 does not constitute negligence." Yet, § 61-13-103, MCA, contains the general seatbelt use requirements and in part, specifies that if § 61-9-420, MCA, applies, the child should be properly restrained. In that same Chapter, § 61-9-422, MCA, deals specifically with the admissibility of evidence related to the child safety restraint statute, § 61-9-420, MCA, and explains that failure to comply with the child safety restraint statute "does not alone constitute negligence."

¶24 While the general statute implies that improper restraint of a child does *not* constitute negligence, the statute specific to child safety restraints provides that failure to comply with the required restraints does not *alone* constitute negligence. *Compare* § 61-13-106, MCA, *with* § 61-9-422, MCA. "[W]hen a general statute conflicts with a more specific statute, the more specific statute controls." *State v. Oie*, 2007 MT 328, ¶ 17, 340 Mont. 205, 174 P.3d 937. Therefore, the fact that Mullendore did not properly restrain Spencer was appropriately considered by the jury but is not sufficient alone to constitute negligence.

¶25 Here, there is sufficient evidence in the record that demonstrates a rational juror could find that Mullendore's actions were the cause-in-fact of Spencer's death because Mullendore's negligent acts went beyond merely violating § 61-9-420, MCA. As the State correctly explains, Mullendore incorrectly assumes that failure to properly restrain Spencer

8

was her only negligent conduct. The jury heard evidence that Mullendore was potentially under the influence of alcohol at the time of the accident, failed to properly restrain her children in car seats, exited the roadway at a high rate of speed after being rearended, reentered the roadway, drove into oncoming traffic, and collided head-on with the Yukon. A rational juror could find that Mullendore's actions evidence a conscious disregard of the risk that Spencer could be killed. Likewise, a rational juror could conclude her actions involved a gross deviation from the standard of conduct of a reasonable person in Mullendore's situation.

¶26 Under § 45-2-201(3)(b), MCA, the State was required to prove that Mullendore's conduct was a "but-for" cause of Spencer's death and that his death was not "too remote or accidental in its occurrence to have a bearing on the actor's liability or on the gravity of the offense." Here, viewed in the light most favorable to the State, the evidence permitted the jury to find that, but for Mullendore's negligent operation of the vehicle (including driving with young children improperly restrained, leaving and reentering the roadway at high speed, crossing into oncoming traffic, and failing to brake), Spencer would not have been subjected to the fatal head-on impact. The risk that materialized, fatal blunt-force injury in a high-speed collision, is precisely the type of harm such conduct foreseeably endangers and thus is not too remote or accidental to bear on her criminal liability.

¶27 Additionally, Mullendore argues that any causal chain was broken by the intervening, superseding cause of Duncan rearending the Acura. As explained above, the evidence of Mullendore's negligent acts goes beyond improperly restraining Spencer in a

9

car seat. Mullendore's acts *following* Duncan's rearending her could be considered negligent beyond a reasonable doubt. "By definition, a superseding, intervening event is an unforeseeable event that occurs *after* the defendant's original act of negligence." *Sizemore v. Mont. Power Co.*, 246 Mont. 37, 47, 803 P.2d 629, 635 (1990) (emphasis added). Since Duncan's act happened before at least some of Mullendore's negligent acts, Duncan's act, by definition, is not an intervening, superseding cause.

¶28 We are convinced that sufficient evidence exists upon which a rational juror could find that but for Mullendore's negligent acts, Spencer would not have died. The District Court did not err in denying Mullendore's motion to dismiss the negligent homicide charge.

¶29 *Issue Two: Whether Mullendore's counsel provided ineffective assistance of counsel.*

¶30 Mullendore argues in the alternative that her counsel was ineffective. Mullendore believes her counsel erred in two prejudicial ways. First, Mullendore contends that her counsel should have objected to the seatbelt evidence offered by the State at trial. Second, Mullendore argues that her counsel provided ineffective assistance by failing to submit a jury instruction explaining the requisite causal relationship between Mullendore's actions and Spencer's death and by failing to submit a jury instruction on the definition of an intervening, superseding act.

¶31 A defendant is guaranteed the right to effective assistance of counsel under Article II, Section 24 of the Montana Constitution and the Sixth Amendment to the United States Constitution, incorporated through the Fourteenth Amendment. *State v. Santoro*. This Court applies the two-pronged test from *Strickland v. Washington*, 466 U.S. 668, 104 S.

10

Ct. 2052 (1984), when assessing ineffective assistance of counsel claims. *Santoro*, ¶ 15. The *Strickland* test requires the defendant to "(1) demonstrate that counsel's performance was deficient or fell below an objective standard of reasonableness and (2) establish prejudice by demonstrating that there was a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different." *Santoro*, ¶ 15 (quotations omitted). We strongly presume "that counsel's conduct falls within the wide range of reasonable professional conduct." *Santoro*, ¶ 15. The prejudice prong "considers the likelihood of success of the actions counsel failed to take." *Howard*, ¶ 22 (quotation omitted).

¶32    Before assessing an ineffective assistance of counsel claim on direct appeal, we first consider if the claim is more appropriately resolved in a postconviction relief proceeding. *Santoro*, ¶ 16. "[A] record which is silent about the reasons for the attorney's actions or omissions seldom provides sufficient evidence to rebut" the presumption that counsel's conduct was reasonable. *State v. Sartain*, 2010 MT 213, ¶ 30, 357 Mont. 483, 241 P.3d 1032. Consequently, "if the record fails to answer the question 'why' counsel did or did not take the actions constituting the alleged ineffective assistance, . . . the claims are better raised by a petition for post-conviction relief where the record can be more fully developed, unless no plausible justification exists for defense counsel's actions or omissions." *Sartain*, ¶ 30 (quotations omitted).

¶33    Here, we address Mullendore's ineffective assistance of counsel claim because the claim is capable of resolution by examining the record alone. *See Rukes v. State*, 2013 MT

56, ¶ 19, 369 Mont. 215, 297 P.3d 1195; *Howard*, ¶ 21. Importantly, this Court has not "found counsel ineffective for failing to raise a meritless claim." *Howard*, ¶ 26. "Counsel's failure to object does not constitute ineffective assistance when the objection lacks merit and properly would have been overruled." *Howard*, ¶ 26.

¶34 Mullendore first argues that her counsel should have relied on § 61-13-106, MCA, to object to the State's seatbelt evidence and request the District Court instruct the jury that buckling Spencer as Mullendore did does not constitute negligence. As addressed above, the District Court was correct in allowing the seatbelt evidence to be considered by the jury as evidence of negligence. The District Court was not required to instruct the jury on § 61-13-106, MCA. As a result, even if Mullendore's counsel had objected to the seatbelt evidence, the objection would have lacked merit. Therefore, Mullendore fails under the first prong of *Strickland* because Mullendore's counsel's conduct was not deficient, and her counsel is not expected to raise a meritless objection.

¶35 Mullendore also contends that the jury was not informed that the State was required to prove Mullendore's conduct was both the cause-in-fact of Spencer's death and that Spencer was foreseeably endangered. Instruction No. 16, offered to the jury, states:

> A person acts negligently when an act is done with a conscious disregard of the risk, or when the person should be aware of the risk.
>
> The risk must be of a nature and degree that to disregard it involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.
> "Gross deviation" means a deviation that is considerably greater than lack of ordinary care.

Mullendore cites § 45-2-101(43), MCA, which provides that "a person acts negligently with respect to a result or to a circumstance described by a statute defining an offense when the person consciously disregards a risk *that the result will occur* or that the circumstance exists or when the person disregards a risk of which the person should be aware *that the result will occur*." (emphasis added). Mullendore believes that her counsel should have objected to the omission of the language "that the result will occur." She argues that the jury was never clearly informed of the applicable conduct related to this case. In other words, she believes the jury was required to be instructed that the specific risk here was the result of Spencer's death, and Mullendore's counsel was ineffective for not offering an instruction to clarify the causal relationship that was required to convict Mullendore of negligent homicide.

¶36 The State responds that the jury was fully and fairly informed of the relevant law. It highlights Instruction No. 28 given to the jury, which provides that "[a] person commits the offense of negligent homicide if the person negligently causes the death of a human being."

¶37 We review a district court's jury instructions "in their entirety in order to determine if they fully and fairly instruct the jury on the law applicable to the case." *State v. Marfuta*, 2024 MT 245, ¶ 21, 418 Mont. 353, 557 P.3d 1260 (quotation omitted). "District courts have broad discretion in providing jury instructions, and reversible error only exists if the jury instructions prejudicially affected the defendant's substantial rights." *State v. Strizich*, 2021 MT 306, ¶ 18, 406 Mont. 391, 499 P.3d 575 (quotation omitted).

13

¶38 We can address the prongs of *Strickland* in any order. *State v. Dubois*, 2006 MT 89, ¶ 48, 332 Mont. 44, 134 P.3d 82 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of prejudice, that course should be followed."). Thus, here, in order to successfully argue that her counsel was ineffective for failing to raise an objection to the jury instructions, Mullendore must demonstrate that but for her counsel's failure, the jury instructions would have been different, and there is a reasonable probability that the result of the negligent homicide conviction would have been different. *See Santoro*, ¶ 15.

¶39 Although the negligence instruction did not repeat the clause "that the result will occur" from the pattern instruction, the court separately instructed the jury that the State had to prove beyond a reasonable doubt that Mullendore "caused the death of Spencer" to convict her of negligent homicide, and that each element of the charged offenses had to be proven beyond a reasonable doubt. Reading the instructions together, the jury could not convict without finding that Mullendore's negligent conduct caused Spencer's death. Under these circumstances, Mullendore has not demonstrated a reasonable probability that a more detailed negligence or intervening-cause instruction would have changed the verdict, and counsel was not ineffective for failing to request additional language.

¶40 We conclude that Mullendore cannot establish a reasonable probability of a different outcome. *See State v. Parker*, 2025 MT 92, ¶ 21, 421 Mont. 473, 571 P.3d 1011. In addition to Instructions No. 16 and 28, the District Court also gave Instruction No. 29, which provides, in part:

> To convict the Defendant of Negligent Homicide, the State must prove the
> following elements:

14

1. That the Defendant caused the death of SPENCER BUDDE, JR., a human being; and

2. That the Defendant acted negligently.

Taking the Instructions together, the jury was fully and fairly informed of the requisite elements of negligent homicide: the State was required to prove that Mullendore was the cause-in-fact of Spencer's death and that she acted negligently in consciously disregarding the risk that the result—Spencer's death—would occur.

¶41 Finally, Mullendore argues ineffective assistance of counsel on the basis that her counsel should have offered an instruction on the definition of an intervening, superseding cause because Duncan's act allegedly broke the causal chain. Since Duncan's act was not an intervening, superseding cause, this claim is meritless, and Mullendore is unable to meet the first prong under *Strickland*. *See Howard*, ¶ 26.

¶42 Based on a review of the record, we conclude that Mullendore is unable to prove her ineffective assistance of counsel claims.

¶43 *Issue Three: Whether the District Court abused its discretion by allowing Officer Cook's and Officer DeNio's testimony.*

¶44 Mullendore argues that the District Court erred by allowing Officer Cook and Officer DeNio to testify regarding matters on which they were not qualified as experts. Specifically, she believes that it was improper for Officer Cook to testify on the trajectory and estimated speed of the Acura and to opine on whether the children were wearing seatbelts because Officer Cook is not qualified as an expert on accident reconstruction or how seatbelts work. Mullendore also contends that the District Court should have

15

sustained her objection to Officer DeNio's testimony on redirect examination because the State never disclosed Officer DeNio's speed calculations.

¶45 The State responds that Mullendore only objected to Officer Cook's testimony on the speed calculation, not any of his other testimony. The State believes that Officer Cook was qualified as an expert to opine on the Acura's speed. As for Officer DeNio's testimony, the State argues that the testimony was proper because Mullendore's counsel opened the door to the testimony on cross.

¶46 The record indicates that Mullendore's counsel objected when the State asked Officer Cook to opine on the trajectory of Mullendore's car after she was rearended and to opine on the speed of the Acura at the time it collided with the Yukon. Mullendore's counsel objected on the basis that the questions solicited improper expert testimony, but the Court overruled both objections. Officer Cook proceeded to testify about the trajectory of the Acura after it was rearended and estimated that Mullendore was traveling just over 71 miles-per-hour when she hit the Yukon. The relevant inquiry is whether Officer Cook was properly qualified under Rule 702 to offer expert testimony on these subjects.

¶47 "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." M. R. Evid. 702. "The determination of the qualification and competency of an expert witness rests within the sound discretion of the trial court and will not be disturbed absent a showing of abuse of discretion." *State v. Clausell*, 2001 MT 62,

¶ 21, 305 Mont. 1, 22 P.3d 1111. Importantly, "the degree of a witness'[s] qualifications affects the weight of the expert's testimony, not its admissibility." *Clausell*, ¶ 21.

¶48 Rule 702 "implicitly requires a foundation showing that the expert has special training or education and adequate knowledge on which to base an opinion." *Hulse v. DOJ, Motor Vehicle Div.*, 1998 MT 108, ¶ 48, 289 Mont. 1, 961 P.2d 75 (citation omitted). We have explained that "[i]n cases involving complex accident investigations, . . . it is imperative that the record demonstrate the officer is qualified as an expert on the matter." *State v. James*, 2024 MT 109, ¶ 16, 416 Mont. 412, 549 P.3d 418. Yet, district courts should liberally construe the rules of evidence to admit all relevant expert testimony even if the evidence is "shaky." *McClue v. Safeco Ins. Co.*, 2015 MT 222, ¶ 23, 380 Mont. 204, 354 P.3d 604. The testimony is then "open for attack through the traditional and appropriate methods: vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *McClue*, ¶ 23 (quotations omitted).

¶49 The State highlights *Goodnough v. State*, 199 Mont. 9, 18-19, 647 P.2d 364, 368-69 (1982), where we concluded that a highway patrolman was qualified to estimate the speed of a vehicle from the length of the skid marks and damage to the vehicles. There, the officer had been a "patrolman for twelve years, had investigated about 1,500 accidents, and had training in accident investigation." *Goodnough*, at 18, 647 P.2d at 369. Here, by contrast, Officer Cook had only been with the Billings Police Department for about three years at the time of the crash. Although Officer Cook explained that he is not an expert in crash reconstruction, Officer Cook has training in technical crash investigations. As a part

of his crash investigation training, he is taught to calculate speed. For this particular crash, he consulted his crash investigation instructor and utilized reference sheets from his training to calculate the speed of the Acura.

¶50 Here, we conclude that the District Court did not abuse its discretion in permitting Officer Cook to opine on the trajectory and speed of the Acura. Although he may not have been an experienced accident investigator, he had the minimum training necessary to qualify as an expert on the topics under Rule 702.[1] Again, the degree of an expert's qualifications affects the weight of his testimony, not the admissibility of his testimony. *Clausell*, ¶ 21. Officer Cook was subject to thorough cross examination by Mullendore's counsel, which highlighted the weaknesses in his testimony. For example, Officer Cook testified that this case was his first real world speed calculation, and Mullendore's counsel elicited testimony that undermined Officer Cook's speed calculation, particularly regarding the weight of the vehicles, the angle of impact, and the proper formula used. Officer Cook testified that "there potentially could have been a more accurate speed calculation." Mullendore also presented her own crash reconstruction expert, and the jury was allowed to consider his speed calculation compared to Officer Cook's calculation.

¶51 A district court has considerable latitude in ruling on the admissibility of expert testimony, and the record does not demonstrate that the District Court here "arbitrarily exceeded the bounds of reason" in permitting Officer Cook's testimony on the speed and

---

[1] On these facts, we do not recognize a meaningful distinction between the necessary expert qualifications for opining on speed compared to opining on trajectory. Officer Cook's opinion on the trajectory of the Acura arose from his observation of the scene, and his training in crash investigation likely informed that opinion.

18

trajectory of the Acura. We conclude the District Court did not abuse its discretion. *State v. Rodriguez*, 2011 MT 36, ¶ 23, 359 Mont. 281, 248 P.3d 850.

¶52 Before trial, the District Court limited DeNio from offering undisclosed numerical "calculations" of speed or momentum. On cross-examination, however, the defense elicited detailed testimony from her regarding Newtonian physics, the grade of the hill, and the physical feasibility of the defense's "coasting" theory. In response, the court permitted narrowly tailored redirect to clarify, in general physical terms and without new numerical calculations, why DeNio believed the vehicle could not simply coast into its final position without additional propulsion. Given the defense's cross-examination and the limited scope of redirect, the court reasonably concluded that the defense had opened the door to this clarifying testimony and that the redirect did not contravene its pretrial disclosure ruling.

¶53 Mullendore also argues that Officer Cook was not qualified to offer an opinion on whether the children were wearing seatbelts at the time of the accident. "Lay opinion testimony is admissible if the testimony is given in the form of opinions or inferences and is '(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness testimony or the determination of a fact in issue.'" *James*, ¶ 11 (quoting M. R. Evid. 701). Here, although Officer Cook arrived on scene after the children were taken away, the District Court did not abuse its discretion by allowing him to discuss whether the children were wearing seatbelts: Officer Cook was able to view the

condition of the seatbelts as a part of his investigation, and such evidence is permissible under Rule 701.

¶54 Mullendore also argues that the District Court erred in overruling Mullendore's objection to Officer DeNio's testimony on redirect examination. On direct examination, the State asked Officer DeNio if she had performed any of her own calculations in this case. Mullendore's counsel objected on the basis that the question called for expert testimony, and Officer DeNio had not been noticed as an expert. The District Court sustained the objection as to the calculations. On cross examination, Mullendore's counsel asked Officer DeNio various questions about the grade of the hill, how the grade of a hill would affect the speed/acceleration of a vehicle, and the angle of the collision. On redirect examination, the State asked Officer DeNio if the Acura could have rolled onto the street where the collision with the Yukon occurred after it was rearended. After overruling Mullendore's counsel's speculation objection, Officer DeNio began testifying about the use of Newton's laws in crash investigation. Mullendore's counsel raised another objection based on calling for impermissible expert testimony. The District Court overruled the objection, and Officer DeNio proceeded to testify about the angle that the Acura travelled off the roadway and what force was necessary to bring the Acura back onto the roadway before colliding with the Yukon.

¶55 The District Court did not abuse its discretion by allowing Officer DeNio to answer the State's question on redirect. As the State correctly identifies, "[w]hen one party opens the door, or broaches a certain topic that would otherwise be off limits, 'the opposing party

has the right to offer evidence in rebuttal.'" *State v. Guill*, 2010 MT 69, ¶ 39, 355 Mont. 490, 228 P.3d 1152 (quoting *State v. Veis*, 1998 MT 162, ¶ 18, 289 Mont. 450, 962 P.2d 1153). "A district court has wide discretion in determining the scope and extent of reexamination regarding matters brought out on cross-examination." *Veis*, ¶ 19. Although Mullendore objected to Officer DeNio testifying about speed calculations on direct, and the objection was sustained, Mullendore's counsel opened the door on cross examination. The State's question on redirect examination about the path of the Acura after being rearended was relevant in light of Mullendore's line of questioning during cross examination on the grade of the hill, the speed/acceleration of a vehicle rolling down the hill, and the angle of collision. Although Officer DeNio may not have been properly disclosed as an expert witness, Mullendore questioned Officer DeNio as if she was an expert, and the State is allowed to elicit testimony on redirect on that same subject after Mullendore opened the door. *See Cline v. Durden*, 246 Mont. 154, 160-61, 803 P.2d 1077, 1081 (1990) (explaining that counsel effectively overcame his own objection by asking about a report on cross examination, which opened the door to further inquiry on redirect).

¶56 We conclude that the District Court did not abuse its discretion by permitting Officer Cook's and Officer DeNio's respective testimonies.

¶57 *Issue Four: Whether the District Court abused its discretion by denying Mullendore's motion for a mistrial when Mullendore declined a curative instruction following Mullendore's mother's testimony that she had adopted A.R.*

¶58 Mullendore asserts the District Court should have granted her motion for a mistrial after Mullendore's mother testified that she had adopted A.R. At trial, when asked if she

21

knew A.R., Mullendore's mother said, "I adopted her. She was my granddaughter and now she's --." Mullendore's counsel raised a Rule 404(b) objection after Mullendore's mother's statement, which the District Court sustained. At the end of that day, Mullendore moved for a mistrial, and the District Court denied the motion.[2] The District Court proposed a curative instruction, but Mullendore did not want a curative instruction. Mullendore's counsel said:

> Your Honor, we would not ask for a curative instruction. And just so that our thinking is on the record, I don't want to -- it was brief. It was objected to. It was still answered by the witness. We don't want to bring it up again, you know, at the time of jury instructions or whenever to refresh everyone's recollections of something that was objected to and sustained.

¶59 Before trial, Mullendore sought to exclude testimony related to the Child Protective Service cases in which Mullendore was or is involved. The State responded that the limitations on Mullendore's parental rights were evidence of her motive: the State's theory was that Mullendore fled the scene after being rearended because she was in violation of her parental restrictions and did not want to get caught. Prior to trial, the District Court ordered that this evidence was not precluded under Rule 404(b) because it went to the State's theory of proving motive. However, the District Court recognized the prejudicial

---

[2] Mullendore also argues that testimony from Mullendore's sister violated the order in limine referenced below. Mullendore's sister testified that she, herself, was not subject to a court order that prevented contact with the children. However, Mullendore did not object to the testimony from Mullendore's sister and only moved for a mistrial based on Mullendore's mother's statement about adoption. Therefore, we need not address whether Mullendore's sister's statement warrants a mistrial. *See State v. Long*, 2005 MT 130, ¶ 35, 327 Mont. 238, 113 P.3d 290 (explaining that the general rule in Montana is that the Court will not address an issue raised for the first time on appeal or a party's change in legal theory).

impact of such evidence, and based on the parties' stipulation, ordered that only the following be read during the State's case-in-chief:

> The jury is instructed that:
>
> Pursuant to a Court Order, the Defendant was not authorized to have unsupervised contact with her children on November 23, 2019.
>
> This evidence is not admitted to prove the character of the Defendant or to show she acted in conformity therewith. The only purpose of admitting this evidence is to show proof of motive, knowledge, and absence of mistake or accident. You may not use this evidence for any other purpose.
>
> The Defendant may not be convicted for any other offense not charged in this case. For the jury to convict the Defendant of any other offense other than those charged in this case may result in unjust double punishment of the Defendant.

¶60    "A district court's decision to grant or deny a motion for mistrial must be based on whether the defendant has been denied a fair and impartial trial." *State v. Bollman*, 2012 MT 49, ¶ 33, 364 Mont. 265, 272 P.3d 650. A mistrial is appropriate when "there is a reasonable possibility that inadmissible evidence might have contributed to the conviction." *Bollman*, ¶ 33. We consider the strength of the prohibited statement against the defendant, the prejudicial effect, and whether a curative instruction could cure any prejudice. *Bollman*, ¶ 33.

¶61    We conclude that there is no reasonable possibility that Mullendore's mother's statement contributed to Mullendore's conviction. As in *Bollman*, the statement was not solicited by the State and was an inadvertent remark. *Bollman*, ¶ 34. Yet, it is clear that the statement violated the order in limine and was inadmissible.

¶62 First, we analyze the strength of the statement. Mullendore identifies that during jury deliberations, the jury submitted the following question to the District Court: "What was the custody agreement at the time of the crash?" Mullendore believes that this question demonstrates that the jury focused on the inadmissible statement about adoption. Here, although the statement may have caused the jury to inquire further about Mullendore's parenting rights, the statement was not strong evidence against Mullendore for the charged crimes. We have explained that evidence is strong when it is "the only link" between the defendant and the charged offense. *State v. Partin*, 287 Mont. 12, 18, 951 P.2d 1002, 1006 (1997). Here, the inadmissible statement does not link Mullendore to the charged offense, and ample evidence exists against Mullendore including, primarily, her driving behavior. Thus, the statement is not strong evidence against Mullendore.

¶63 Next, we consider the prejudicial impact of the prohibited statement. "The standard for establishing prejudice is whether a substantial right was denied." *Bollman*, ¶ 35. Mullendore believes the statement was extremely prejudicial because it informed the jury that Mullendore was deemed unfit to parent. The State responds that adoption can happen in various contexts and that the statement did not inform the jury that Mullendore's parental rights had been terminated. The record indicates that the statement was brief and not drawn out by the State. Although the statement violated the order in limine, the jury had already been informed that Mullendore was not authorized to have unsupervised contact with her children at the time of the crash. While the statement on adoption may have caused the jury to reflect more keenly on the status of Mullendore's parenting rights, the statement

was isolated and cannot reasonably be said to be so prejudicial to warrant a mistrial. It is very unlikely that the jury convicted Mullendore based on this isolated statement, especially considering the jury was allowed to consider the fact that Mullendore was in violation of her parenting rights at the specific time of the crash.

¶64 Lastly, we consider whether a curative instruction would have cured any prejudice. *Bollman*, ¶ 36. Mullendore's counsel did not want a curative instruction, explaining that the statement was brief, and did not want to emphasize it to the jury again. In *Bollman*, we refused to hold the district court in error for failing to give a curative instruction when the defense opted not to seek one. *Bollman*, ¶ 36. The same conclusion is warranted here.

¶65 The District Court did not abuse its discretion by denying Mullendore's motion for a mistrial.

¶66 *Issue Five: Whether the District Court erred by ordering Mullendore to pay Spencer, Sr. restitution for lost wages.*

¶67 Finally, Mullendore argues that the District Court erred by ordering Mullendore to pay Spencer, Sr. restitution for lost wages. Spencer, Sr. is Spencer's father. At the sentencing hearing, the District Court ordered Mullendore to pay $9,458.19 to Spencer, Sr. in restitution for lost wages. The District Court reached this figure by calculating 191.5 hours at $49.39 per hour. Mullendore does not challenge the District Court's factual finding as to the calculation. Instead, Mullendore argues that as a matter of law, lost wages are not recoverable as restitution because they are not expenses involving a cash payment or outlay. Mullendore is incorrect.

25

¶68     We review conclusions of law regarding the measure of restitution for correctness. *State v. Barrick*, 2015 MT 94, ¶ 11, 378 Mont. 441, 347 P.3d 241. Section 46-18-241(1), MCA, provides that "a sentencing court shall, as part of the sentence, require an offender to make full restitution to any victim who has sustained pecuniary loss, including a person suffering an economic loss." "Victim" includes "a member of the immediate family of a homicide victim." Section 46-18-243(2)(a)(ii), MCA. "Pecuniary loss" includes, in relevant part:

> (a)   all special damages, but not general damages, substantiated by evidence in the record, that a person could recover against the offender in a civil action arising out of the facts or events constituting the offender's criminal activities, including without limitation out-of-pocket losses, such as . . . loss of income,
>
> .   .   .
>
> (d)   reasonable out-of-pocket expenses incurred by the victim in filing charges or in cooperating in the investigation and prosecution of the offense.

Section 46-18-243(1)(a), (d), MCA.

¶69     Mullendore cites *Barrick* for the proposition that lost wages that are never earned are not out-of-pocket expenses, and thus, not recoverable as restitution. Mullendore distorts our analysis in *Barrick*. Since *Barrick*, we have clearly explained "[u]nlike restitution ordered under subsection (1)(a), subsection (1)(d) 'provides for recovery of victim expenses involving a cash payment or outlay.'" *State v. Lowry*, 2019 MT 191, ¶ 17, 397 Mont. 11, 446 P.3d 1148 (quoting *Barrick*, ¶ 17); *Lodahl*, ¶ 17.

¶70     In *Barrick*, we considered whether a family could be compensated for lost wages related to a criminal proceeding in which the defendant was convicted of killing the family

26

dog. *Barrick*, ¶¶ 6-7. We analyzed subsections (a) and (d) of § 46-18-243(1), MCA, distinctly. *Barrick*, ¶¶ 16-24. Regarding subsection (d), we concluded that the plain and unambiguous language "provides for recovery of victim expenses involving a cash payment or outlay." *Barrick*, ¶ 17. Since the record showed that the lost wages at issue was income that the family claimed it was prevented from earning, it was not an out-of-pocket expense and therefore not recoverable under subsection (d). *Barrick*, ¶ 17.

¶71 Subsection (a)'s language is different. The inquiry for subsection (a) is not whether the lost wages are, in fact, an out-of-pocket expense: recovery under subsection (a) "is clearly contingent upon the victim being able to recover the claimed damages in a civil action." *Barrick*, ¶ 22; *Lowry*, ¶ 11. Thus, the key question is whether Spencer, Sr. would be able to recover lost wages in a civil action against Mullendore related to the crash.

¶72 We consider our precedent in the tort and contract law fields to determine if the restitution award is appropriate. *Lowry*, ¶ 11. In *Barrick*, we held that the family could not recover lost wages under subsection (a) because it was not demonstrated that they would be able to recover that kind of special damages in an action against the defendant for killing their dog. Here, the circumstances are manifestly different. The State draws our attention to § 27-1-323, MCA, which provides that in a wrongful death action, "such damages may be given as under all the circumstances of the case may be just." Indeed, a wrongful death action would be the appropriate civil cause of action Spencer, Sr. could bring against Mullendore for the death of his son. *See* § 27-1-513, MCA. Montana's wrongful death statute is a "general loss" statute. *In re Est. of Bennett*, 2013 MT 230, ¶ 10,

27

371 Mont. 275, 308 P.3d 63. Additionally, wrongful death actions seek damages related to the personal loss of the survivors. *In re Est. of Bennett*, ¶ 12. We conclude that it was not error for the District Court to award Spencer, Sr. restitution for his lost wages because subsection (1)(a) of § 46-18-243, MCA, is satisfied.

**CONCLUSION**

¶73 The District Court did not err when it denied Mullendore's motion to dismiss the negligent homicide charge. A review of the record indicates that Mullendore's counsel was not ineffective, so Mullendore's ineffectiveness claim fails. The District Court did not abuse its discretion by allowing Officer Cook and Officer DeNio to testify on the areas that Mullendore challenges. The District Court also did not abuse its discretion by denying Mullendore's motion for a mistrial based on the adoption testimony. Finally, the District Court did not err by ordering Mullendore to pay restitution for lost wages.

Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ KATHERINE M. BIDEGARAY
/S/ JIM RICE